UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:19-10190-CIV-MORENO

STEPHEN BUZZELL, JR., et al.,

    Plaintiffs,

vs.

FLORIDA KEYS AMBULANCE
SERVICE, INC. and
EDWARD BONILLA,

    Defendants
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION
TO RECONSIDER AND VACATE ORDER DISMISSING
<u>PLAINTIFFS' ACTION AND FOR A NEW TRIAL</u>**

    Plaintiffs, STEPHEN BUZZELL, JR., *et. al.,* by and through their undersigned attorneys, file this reply in support of their Motion to Reconsider and Vacate Order Dismissing Plaintiffs' Action and for New Trial, and states as follows:

    The Plaintiffs' motion points out that, in the absence of a judgment, the dismissal order is not final. The Defendants do not disagree, nor do they disagree that the Court has the power to reconsider a nonfinal order or to grant a new trial pursuant to Rule 59. The only disputed issue is whether the court should exercise that authority to assure that the Plaintiffs receive a fair trial.

    The Defendants misrepresent the grounds for the Plaintiffs' motion when they argue that the Plaintiffs merely disagree with the conclusion reached by Judge King. This motion is grounded in Judge King's misunderstanding of the law, in his refusal to allow the Plaintiffs

1

to try their case under a correct theory of law, in his unfair conduct of the trial, and in his legally unsupportable failure to allow the Plaintiffs to submit all their evidence to the jury. Reading the transcript as a whole makes clear that Judge King did not appreciate the requirements of the FLSA. The judge made clear his belief that the only issue in the case was whether an employment contract limited what the Plaintiffs could do while they were on call. (Tr. 89, 102, 103-07, 108, 109-10, 111, 129-30, 136) Based on that misapprehension, the judge repeatedly cut off questioning by Plaintiffs' counsel and "clarified" the record by asking his own questions about the absence of limitations imposed by an employment contract. (Tr. 87-89, 90-94, 95, 96-98) The judge's erroneous view of the law prompted his belief, without hearing all the evidence, that the testifying plaintiff "was paid every dime he was supposed to be paid under the contract" and "therefore, the case will be dismissed." (Tr. 141) The Plaintiffs are entitled to a new trial to correct those errors.

I. **A New Trial Should Be Ordered Because the District Court Unreasonably Interfered with the Presentation of the Plaintiffs' Case**

The Defendants agree that Rule 59 authorizes a court to grant a new trial if the trial was unfair. (Doc. 111 at 2-3, *citing Johnson v. Clark,* 484 F.Supp.2d 1242, 1246 (M.D. Fla.2007)). The trial was unfair because Judge King "assume[d] the role of an advocate." *Sec. & Exch. Comm'n v. Levin,* 849 F.3d 995, 1007 (11th Cir. 2017). As Plaintiffs' motion demonstrates, Judge King repeatedly interrupted Plaintiffs' counsel, did not allow Plaintiffs' counsel to ask relevant questions (despite the absence of defense objections), aggressively questioned the only witness the Plaintiffs were allowed to call, did not allow Plaintiffs' counsel to put on their full case, and decided the case in the Defendants' favor in the absence of a full record. Based on a mistaken theory of law, the court abandoned its role as a neutral arbiter

and prevented the jury from deciding the case on its merits. The Defendants cite no authority to suggest that a judge may assume the role of an advocate.

The Defendants contend that Judge King was capable of trying the case. They note that he conducted voir dire, that he "made rulings of law," and that he "asked questions of the Plaintiff." (Doc. 111 at 3). Yet the court's rulings of law[1] were incorrect and the court's questioning of the Plaintiff overstepped the role of a neutral advocate. In any event, this motion is not based on the judge's incapacity to try a case. It is based on the court's failure to give the Plaintiffs a fair trial and on its incorrect legal rulings. The degree to which those rulings might be related to the judge's incapacity is not an issue that this court needs to decide.

The Defendants complain that the Plaintiffs' statement of facts "cherry picks" the transcript. (Doc. 111 at 4) In fact, the statement of facts quotes the transcript at length to make clear the pervasive unfairness of the court's conduct of the trial. The Defendants cite only two additional parts of the transcript to support their claim that it was cherry-picked. They complain about the Plaintiffs' opening statement, *id*. at 3-4, but plaintiffs' motion is not based upon any ruling the court made with regard to the opening statement. They also complain that "counsel for Plaintiff did not ask the Plaintiff to identify himself when he took the stand," id. at 4, but the Plaintiffs' motion is not based on the court's interruption of counsel to ask that question. At no point do the Defendants cite the transcript by page number to identify important facts that the Plaintiffs omitted from their argument.

The Plaintiffs' motion is based, in part, on the court's repeated interruptions of counsel to ask its own questions based on its own theory of defense rather than allowing counsel to

---

[1] The judge's incorrect view of the law is discussed in section II of this reply and in section III of plaintiffs' motion.

3

present the Plaintiffs' case as he chose. As the Supreme Court recently noted, the party-presentation principle leaves it to parties to try their own cases. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[i]n our adversarial system of adjudication, we follow the principle of party presentation" in the belief that parties who are represented by counsel "know what is best for them"). The judge's role is to be neutral, not to assist the opposing party in developing facts or issues. *See id.* (the court's role to acting as a "neutral arbiter of matters the parties present"). The statement of facts properly illustrates the manner in which Judge King took over the presentation of evidence, depriving the Plaintiffs of their right to present relevant evidence in the manner they deemed "best for them."

The Defendants argue that Rule 614 of the Federal Rules of Evidence authorizes judges to question witnesses. However, the court abuses that authority "when it 'abandons [its] proper role and assumes that of an advocate'." *United States v. Wright,* 392 F.3d 1269, 1274 (11th Cir. 2004) (quoting Advisory Committee Note to Fed. R. Evid. 614). The judge acted as an advocate when he repeatedly questioned the Plaintiff about his employment contract — an issue that the plaintiff's counsel did not deem relevant to the trial.[2] (Tr. 87-89, 90-94, 95, 96-98) The judge abandoned neutrality when he told the jury: "That's an excellent answer. Now, he knew the answer, it's in the record, and it tells." (Tr. 94) The judge plainly thought the answer was excellent because it supported his erroneous view that an employment contract, not the FLSA, determines whether an on-call employee should receive overtime compensation.

---

[2] Plaintiffs' counsel argued: "Your Honor, the FLSA does not care whether there is a contract or an agreement. It imposes a duty to pay overtime, depending upon what the person is actually doing; not what the agreement is with the employer." (Tr. 112)

The judge "has a duty to conduct the trial carefully, patiently, and impartially." *Wright*, 392 F.3d at 1274 (citation and internal quotation marks omitted). The constant interruptions recited in the Statement of Facts reveal a lack of patience, as do statements such as "Listen, when I'm talking, you get to shut up" (Tr. 75) and "Just keep your mouth shut" (Tr. 98).[3] More importantly, by repeatedly posing questions that favored an erroneous theory of defense and by refusing to allow the plaintiff to ask questions that proved his case, the judge breached his duty to conduct the trial impartially.

Additionally, in the absence of a motion to dismiss or to enter judgment at the close of the plaintiffs' case, the judge aborted the trial without allowing Plaintiff Buzzell to complete his testimony and without hearing the testimony of any other witnesses. It could not be more obvious that the court deprived the Plaintiffs of a fair trial.

The Defendants argue that the Plaintiffs did not object to the judge's improper conduct and that a "plain error" standard of review applies. The failure to object limits the scope of ***appellate*** review to review for plain error. *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). However, this motion does not seek review by an appellate court. No judgment has been entered from which an appeal can be taken. The plaintiffs are preserving their claim of error, in part, by bringing this motion with the expectation that the error will be corrected and no appeal will be necessary. The Defendants cite no authority for the proposition that "plain error" review applies to a Rule 59 motion or a motion for reconsideration.[4]

---

[3] The Defendants' contention that the judge was pleasant to the witness (doc. 111 at 6) is belied by his repeated and unwarranted insistence that the witness should "shut up."

[4] Even under the plain error standard, the motion must be granted. An error is plain if it is "obvious and is clear under current law." *United States v. Carpenter,* 803 F.3d 1224, 1238 (11th Cir. 2015). It is obvious and clear under the precedent cited above that a judge may not deprive a party of a fair trial by abandoning impartiality and assuming the role of an advocate.

In any event, the Plaintiffs preserved the claim of error. A party preserves a claim of error in the court's questioning of witnesses by bringing it to the court's attention "at the next available opportunity when the jury is not present." Fed. R. Evid. 614(c). An objection may take the form of telling the court what action the party wishes the court to take. See Fed. R. Civ. P. 46 (party preserves objection to a ruling by stating the action it wishes the court to take along with the grounds for that request); *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (advising the court of the action a party wishes the court to take "brings to the court's attention his objection to a contrary decision").

Pursuant to Rule 614(c), the Plaintiffs created the "next available opportunity" outside of the jury's presence to preserve their claim of error by asking for a sidebar to "clear up" the judge's misconception about the law that prompted the court's improper questioning and its rulings on materiality.[5] (Tr. 97) Even before the sidebar, Plaintiffs' counsel made clear to the court his disagreement with the court's view that what the Plaintiffs could or could not do on their own time was not "relevant or material to anything."[6] (Tr. 88)

During the sidebar, the court initially asked defense counsel why he was not objecting to the Plaintiffs' question. (Tr. 99-100) The judge then repeated his view that the Plaintiffs' employment contract did not limit what they could do on their own time, which seemed to be the only fact he viewed as material. (Tr. 100) Counsel advised the court that the critical

---

Moreover, the defendants do not argue that the Plaintiffs forfeited their argument that the judge's understanding of the FLSA was erroneous.

[5] A party need not take exception to a judge's ruling on the materiality of evidence to preserve an objection to the ruling. Fed. R. Civ. P. 46.
[6] Counsel also pointed out that the court was sustaining objections in the absence of an objection. (Tr. 97)

issue in an "on call" case is "whether the employee is waiting to be engaged to work or is engaged to be waiting to work." (Tr. 100) Accordingly, the jury needed to "understand how much freedom the employee had to do the things the employee wanted to do --." (Tr. 100-01) The court cut off counsel's remarks and reiterated its own view of the law, but counsel made clear his disagreement with the court's rationale for substituting its own questions for those that counsel was trying to ask.

When the court again brought the discussion around to whether the employment contract restricted the Plaintiffs' actions, counsel responded that the question was whether the Plaintiffs had adequate time to do what they wanted to do while "on call," given the time constraints imposed by the need to respond to the scene of a call within a half hour. (Tr. 102-03) The court ridiculed counsel's "nice theory" and said that the proffered testimony was "totally immaterial to this case. I have so ruled, and that's the way it is." (Tr. 104)

Plaintiffs' counsel made another effort to explain why his questions were relevant and why the court's questions missed the point of the legal theory underlying the case: "Your Honor, I think we're talking past each other a little bit because I agree with you that what he could and couldn't do and what he was told he could and couldn't do is one thing. The question in this case is: While he was on call, did he have a sufficient amount of personal freedom and time to do what he wanted to do such that he should not be paid overtime for those hours?" (Tr. 104) The court responded that "It's the contract that he had with them." (Tr. 105) Reaffirming the rulings it had already made, the court stated:

> If he wanted engaged to wait in there, he should have evidence in this record from somebody from his employer that said: We understand that, and you get it. And that's not in the record. And he can't say that he did it and then say: I thought it was in the record. He's supposed to tell us up front what was in the record, what -- his contract and he hasn't. He said no, he didn't have engaged

7

> to wait in his contract and that's fine. I wouldn't expect him to. So it's immaterial and we'll cut it off.

(Tr. 105) The record is clear that Plaintiffs' counsel disagreed with the judge's rationale for cutting off his questioning and for asking his own questions about the plaintiffs' employment contract. Having brought that disagreement to the court's attention and making clear his desire for a different ruling, Plaintiffs' counsel preserved the claim of error.[7] *See Holguin-Hernandez*, 140 S. Ct. at 766 (claim of error is preserved when party advises the court of the position the party wants the court to take).

Finally, the Defendants argue that the judge's questioning of the witness was not prejudicial because it did not influence the verdict. Since there was no verdict, that argument is disingenuous. The judge deprived the Plaintiffs of a fair trial by interfering with the Plaintiffs' presentation of evidence. Had the case been submitted to the jury, the judge's unfair conduct of the trial would have been sufficient reason to grant a new trial. The judge's dismissal of the action based on an erroneous view of the law, thus depriving the Plaintiffs of a jury verdict, is a second form of unfairness that warrants a new trial.

## II. A New Trial Should Be Ordered Because the Dismissal Was Erroneous as a Matter of Law

The dismissal order was based on the judge's erroneous view that the only issue in the case was whether the plaintiffs were expressly forbidden by their employment contract from using their on-call time in a particular way. That is not the law. Whether on-call time counts as "hours worked" under the FLSA "depends on the degree to which the employee may use

---

[7] Oddly, the Defendants complain that Plaintiffs' counsel spent "over an hour arguing with the Judge on his ruling of law." (Doc. 111 at 6) The Defendants' concession that the Plaintiffs opposed the judge's ruling is inconsistent with the Defendants'. position that the Plaintiffs did not preserve their claim of error.

the time for personal activities." *Birdwell v. City of Gadsen*, 970 F.2d 802, 807 (11th Cir. 1992) (*citing Skidmore v. Swift & Co.,* 323 U.S. 134, 136 (1944)). That question does not turn on the terms of an employment contract but on whether the "the employee can use the [on-call] time effectively for his or her own purposes." *Halferty v. Pulse Drug Co.,* 864 F.2d 1185 (5th Cir. 1989). Since this is a question of fact, *Paniagua v. City of Galveston, Texas*, 995 F.2d 1310, 1316 (5th Cir. 1993), the Plaintiffs were entitled to a jury's determination of liability for unpaid overtime.

Notably, the Defendants do not dispute or even address the legal standard that governs overtime for on-call time. They instead argue that the Plaintiffs could not prove their case with speculative or conjectural evidence about what they could or could not do. Yet the plaintiffs did not ask their witness to speculate about anything.

Plaintiff Buzzell testified without objection that he could not travel more than five miles from his house when he was on-call because he needed to respond to calls within 30 minutes. (Tr. 86) Buzzell testified that he could not respond within 30 minutes if he traveled more than ten minutes away from the station while on-call. (Tr. 86-87) He testified that the 30-minute response time limited the things he could do while he was on-call. (Tr. 87) To compare the things Buzzell could do while he was off-duty to the things he could while he was on-call, Plaintiffs' counsel asked Buzzell about the things he did while he was off-duty. (Tr. 87) Since that question went to how Buzzell used his time when he had the freedom to do so, the question obviously asked for material evidence. The question did not ask for speculation or conjecture; it solicited facts about what Buzzell actually did when he was free to engage in his own pursuits. Yet the judge (in the absence of any objection) ruled that the question did not ask for material facts. (Tr. 87-88)

9

Plaintiffs' counsel then attempted to clarify the materiality of his questions by asking Buzzell to testify about the things he could not do and places he could not go because he needed to respond to calls within 30 minutes. (Tr. 88) The defense objected to relevance, but limitations of the freedom to engage in chosen pursuits lie at the heart of an on-call overtime claim. *Halferty,* 864 F.2d at 1189; 29 C.F.R. § 785.17. The court sustained the objection because it was "hypothetical," but Buzzell was not asked to speculate. He was capable of testifying from personal knowledge and experience about activities in which he could not engage because of the requirement that he respond within 30 minutes.

The court characterized the question as hypothetical because nothing in Buzzell's employment agreement limited what he could do while on-call. (Tr. 89-90) According to the court, because his employment agreement did not tell Buzzell what he could or couldn't do while on call, "That ends it." (Tr. 90) The court was wrong as a matter of law. The question is whether the 30-minute response time was so restrictive that "employees cannot effectively use the [on-call] time for personal purposes." U.S. Dept. of Labor WHD Opinion Letter, FLSA2009-17 (Jan. 16, 2009). *Accord, Halferty*, 864 F.2d at 1189 (citing 29 C.F.R. §§ 785.16-17). Counsel's attempt to elicit the "personal purposes" that Buzzell could not pursue because of the required response time was plainly material, whether or not express limitations on what Buzzell could do while on call were stated in an employment contract.

Plaintiffs' counsel then asked Buzzell, "given the fact that you had to get to the hospital within a half hour when you were on-call, were there things that you were not free to do while you were on call in order to comply with that half hour requirement?" (Tr. 95) The court invited an objection to materiality and sustained the objection it invited. That ruling was also in error because the question precisely tracked the legal standard for determining whether on-

10

call time is compensable. Accordingly, the record does not support the Plaintiffs' contention that the plaintiffs were asking for inadmissible conjecture. They were asking for relevant facts about what Buzzell could not do while complying with the 30-minute response requirement. The Plaintiffs' case was based on fact, not conjecture, but the court refused to allow those facts into evidence.

The Defendants argue that the dismissal was appropriately granted pursuant to Rule 50(a). The Defendants did not move for entry of judgment as Rule 50(a)(2) requires. The Defendants argue that a "*sua sponte* directed verdict prior to the close of plaintiff's evidence is appropriate when it becomes apparent that the Plaintiff will be unable to prove their case."[8] (Doc. 111 at 7) In support of that argument, the Defendants cite Rule 50(a). Yet Rule 50(a) authorizes the court to enter judgment as a matter of law only if "a party has been fully heard on an issue during a jury trial." Fed. R. Civ. P. 50(a)(1). The court dismissed the case despite being advised that Plaintiffs' counsel had more questions for Buzzell (Tr. 107) and that the Plaintiffs intended to call other witnesses (Tr. 111). As the plaintiffs were not allowed to present all their evidence, they clearly were not "fully heard." See Fed. R. Civ. P. 50 advisory committee's note — 1991 amendment (court may enter judgment only after "a party has completed a presentation on a fact essential to that party's case" and only after the party has "been afforded an opportunity to present any available evidence bearing on that fact").

The Defendants cite *Insinga v. LaBella*, 845 F.2d 249, 251 (11th Cir. 1988), for the proposition that a court may sua sponte direct a verdict for a party. The district court *sua sponte* dismissed a medical malpractice claim after finding as a matter of law that the defendant owed

---

[8] While courts and lawyers commonly refer to a Rule 50(a) judgment as a "directed verdict," the 1991 revision of Rule 50 abandoned that term. See Fed. R. Civ. P. 50 advisory committee's note — 1991 amendment.

11

no duty of care to the pro se plaintiff. The court of appeals did not decide whether the judge's ruling was proper. It instead certified to the state supreme court the issue of whether Florida law recognizes the corporate negligence doctrine. *Insinga,* 845 F.2d at 255. The court of appeals did not address the propriety of dismissing a case pursuant to Rule 50(a) before all the evidence is heard. After the Florida Supreme Court answered the certified question, the court of appeals reversed the district court's dismissal. *Insinga v. LaBella*, 876 F.2d 883, 884 (11th Cir. 1989). The defendants have thus cited no authority in support of the proposition that a directed verdict can be entered against a party when the party's case has not been fully heard. That position contravenes the clear language of Rule 50(a). *See, e.g., Serianni v. City of Venice,* No. 8:10-cv-2249-T-33TBM, at *10 (M.D. Fla. Oct. 31, 2012) (noting that the plaintiff's case was fully heard because his "case-in-chief was completed prior to the Court's ruling"); *New Prods. Corp. v. Tibble (In re Modern Plastics Corp.*), 577 B.R. 270, 283 (W.D. Mich. 2017) (party was fully heard "because the court allowed it to present all of its evidence"). Because the court did not allow the plaintiffs to be fully heard, the dismissal of their claims was erroneous as a matter of law.

For the reasons argued above, the dismissal was also incorrect because it was based on the erroneous view that contract terms rather than the FLSA determine whether an employer must pay overtime wages for on-call time. Rule 59 authorizes the court to grant a new trial when "the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 612 (5th Cir. 1985). The trial was unfair because the plaintiffs were not allowed a full opportunity to present their case to the jury, and prejudicial error was committed when the court based a dismissal on an erroneous legal theory before the plaintiffs' evidence was fully heard. A new trial should accordingly be granted.

### III.     The Court Should Reconsider Its Decision

The motion to reconsider is presented as an alternative or additional reason to vacate the dismissal order and grant a new trial. The only argument the Defendants make against the motion to reconsider is that such motions should make new arguments rather than reflecting mere dissatisfaction with the court's ruling.

Courts have broad discretion to reconsider their prior rulings. *Meidinger v. Comm'r,* No. 2:15-mc-8-FtM-38DNF, at *2 (M.D. Fla. Sep. 21, 2015). "In exercising this discretion, the court balances two competing interests: the need for finality and the need to render just rulings based on all the facts." *Id*. "A motion for reconsideration must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision*." Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.,* 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). Reconsideration is appropriate to correct a clear error or manifest injustice. Meidinger, No. 2:15-mc-8-FtM-38DNF, at *2.

The manifest injustice of the court's dismissal order is a new argument. The facts recited in the motion make clear that the dismissal of the plaintiffs' claim was unjust. The plaintiffs were prevented from presenting all of their evidence to the jury and were deprived of a jury's determination of liability because the court misunderstood the law. The arguments advanced in support of a new trial pursuant to Rule 59 make an equally convincing case that a "just ruling[] based on all the facts" was not rendered in this case. Fla. Coll. of Osteopathic Med., 12 F. Supp. 2d at 1308. The record supports the need for reconsideration to correct a clear error or manifest injustice.

### Conclusion

The Court should reconsider the propriety of its dismissal order and vacate that order so that the case can be fully tried or should grant a new trial pursuant to Rule 59. Either course of action will correct the injustice caused by an intemperate ruling that deprived the plaintiffs of a jury's determination of the facts based on an incorrect understanding of the law.

Respectfully submitted,

*/s/ Dana M. Gallup*
Dana M. Gallup, Esq.
Fla. Bar No. 0949329
E-Mail: dgallup@gallup-law.com
Jacob K. Auerbach, Esq.
Fla. Bar No. 84003
E-Mail: jauerbach@gallup-law.com
**GALLUP AUERBACH**
4000 Hollywood Boulevard
Presidential Circle-Suite 265 South
Hollywood, FL 33021
Telephone: (954) 894-3035
Facsimile: (954) 894-8015
*Co-counsel for Plaintiffs*

Robert S. Norell, Esq.
Fla. Bar No. 996777
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W. 70th Avenue
Suite 305
Plantation, FL 33317
Telephone: (954) 617-6017
*Co-counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served in the manner indicated below on November 4, 2022 on all counsel or parties of record appearing on the Service List below.

By: */s/Dana M. Gallup*
Dana M. Gallup, Esq.

### Service List
CASE NO.: 19-CV-10190-MORENO

Dana M. Gallup, Esq.
E-Mail: dgallup@gallup-law.com
Jacob Auerbach, Esq.
E-Mail: jauerbach@gallup-law.com
**GALLUP AUERBACH**
4000 Hollywood Boulevard
Presidential Circle – Suite 265 South
Hollywood, FL 33021
Telephone: (954) 894-3035
Facsimile: (954) 894-8015
*Co-counsel for Plaintiffs*

Robert S. Norell, Esq.
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W. 70th Avenue
Suite 305
Plantation, FL 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Co-counsel for Plaintiffs*
Method of Service: CM/ECF

Theron Simmons, Esq.
E-Mail: tsimmons@law-bsa.com
**BRIDGES, SIMMONS & ASSOCIATES**
101 NE 3rd Avenue
Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 332-3706
*Co-counsel for Defendants*
Method of Service: CM/ECF

Rainier Regueiro, Esq.
E-Mail: rainier.regueiro@gallardolawyers.com
**GALLARDO LAW FIRM, P.A.**
8492 SW 8th St.
Miami, FL 33144
Office: (305) 261-7000
Co-counsel for Defendants
Method of Service: CM/ECF